UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

| | |
|---|---|
| PARS ICE CREAM CO. OF MARYLAND, INC.   ) <br>   ) <br> Plaintiff,   ) <br>   ) <br> v.   ) <br>   ) <br> BERLINER SPECIAL EVENTS, INC., and   ) <br> BERLINER SPECIALTY DISTRIBUTORS, INC.,   ) <br>   ) <br> Defendants   ) <br>   ) <br> _____) | Case No.: |

## COMPLAINT

Plaintiff Pars Ice Cream Co. of Maryland ("Pars of Maryland"), for its Complaint against Defendant Berliner Special Events, Inc. ("BSE") and Defendant Berliner Specialty Distributors, Inc. ("BSD"), alleges as follows:

## PARTIES

1.      Pars of Maryland is a Maryland corporation with its principal place of business in the District of Columbia.  Pars of Maryland is in the ice cream distribution business in the D.C. metro area.

2.      BSE is a Maryland corporation with its principal place of business in Maryland. BSE is in the ice cream distribution business in the D.C. metro area.

3.      BSD is a Maryland corporation with its principal place of business in Maryland. BSD is in the ice cream distribution business in the D.C. metro area.

## JURISDICTION AND VENUE

4.      Pars of Maryland brings this action under Sections 4 and 16 of the Clayton Act, 15 U.S.C. § § 15(a) and 26, and Section 1 of the Sherman Act, 15 U.S.C. § 1, to obtain injunctive and declaratory relief and to recover treble damages and the costs of this suit, including reasonable attorneys' fees, for injuries sustained by Pars of Maryland as a result of BSE's and BSD's violations of Section 1 of the Sherman Act, 15 U.S.C. § 1.

5.      Pars of Maryland also brings this action pursuant to 28 U.S.C. §§ 2201 and 2202 for a declaratory judgment regarding the rights and obligations, if any, under the Pars of Maryland/UIC Addendum (described below) of it and/or other persons and entities associated with the Sadeghi family.

6.      Jurisdiction over Counts I through III of this action is conferred upon this Court by 28 U.S.C. § § 1331 and 1337 and by Sections 4 and 16 of the Clayton Act, 15 U.S.C. § § 15(a) and 26.

7.      Jurisdiction over Count IV of this action is conferred upon this Court by 28 U.S.C. § 1367 because that claim forms part of the same case or controversy between Pars of Maryland and BSE and BSD as Counts I through III.

8.      Venue is proper in this Judicial District pursuant to 15 U.S.C. § 15(a) and 22 and 28 U.S.C. § 1391(b), (c) and (d) because, BSD and BSE resided, transacted business, were found, or had agents in this District. Moreover, a substantial part of the events giving rise to Pars of Maryland' claims occurred, and a substantial portion of the affected interstate trade and commerce described below has been carried out in this District.

## FACTUAL ALLEGATIONS

9.      BSE and BSD, along with their co-conspirator, have sought to preclude competition from Pars of Maryland, other persons and entities associated with the Sadeghi family and other competitors.

10.     BSE and BSD have accomplished this through, among other things, their unprecedented collective refusal to allow Pars of Maryland and other persons and entities associated with the Sadeghi family to sell non-branded Unilever products in the D.C. metro area.

11.     BSE and BSD have targeted Pars of Maryland and other persons and entities associated with the Sadeghi family because Pars of Maryland is known in the industry as a discounter, offering highly competitive prices to its customers.

12.     BSE and BSD's conduct has kept prices illegally and artificially high.

13.     Among the evidence that BSE and BSD's prices have been illegally and artificially high, in the short time that Pars of Maryland was selling non-branded Unilever products, Pars of Maryland was able to make a profit while selling the products at prices substantially lower than those charged by BSE and BSD.

14.     Upon information and belief, BSE and BSD's illegally and artificially high prices have resulted in millions of dollars of profits at the expense of independent street vendors and the ultimate consumers.

15.     Upon information and belief, BSE entered into "Distributor Agreement (Mobile Vending and Special Events)" with Conopco, Inc. dba Unilever Ice Cream ("UIC") on or about May 1, 2003 (the "BSE/UIC Distributor Agreement"). A true and correct copy of the BSE/UIC Distributor Agreement that has been produced by Plaintiffs is attached hereto as Exhibit A and incorporated herein by reference.

16.     Paragraph 15.e. of the BSE/UIC Distributor Agreement contains the following provision:

> At all times during the term of this Agreement, Company [UIC] covenants it will use its best efforts to stop any transshipment of any Company Impulse Novelty Product to American Wholesale, Inc., any affiliate of American Wholesale, Inc., Pars Ice Cream, any affiliate of Pars Ice Cream, David Sadeghi, any member of the Sadeghi family, or any entity owned or controlled by, or otherwise affiliated with, David Sadeghi or a member of the Sadeghi family (collectively "AWI/Pars/Sadeghi") into the Territory from outside the Territory; provided, however, under no circumstances shall Company [UIC] be required to expend any funds or commence litigation against any person to fulfill its obligations under this paragraph.

17.     The BSE/UIC Distributor Agreement does not purport to preclude the transshipment of non-branded Unilever products by any entities other than Pars of Maryland and "AWI/Pars /Sadeghi" (as defined in the BSE/UIC Distributor Agreement).

18.     BSE President, Guy Berliner, admitted in court, under oath, that BSE does not have an exclusive right to sell non-branded Unilever products in the D.C. metro area.

19.     BSE has interpreted the BSE/UIC Distributor Agreement to preclude Pars of Maryland and other persons and entities associated with the Sadeghi family from selling Unilever products, that they purchase from BSE, in BSE's territory.

20.     BSE has interpreted the BSE/UIC Distributor Agreement to preclude Pars of Maryland and other persons and entities associated with the Sadeghi family from selling Unilever products, that they purchase from a sub-distributor of BSE, in BSE's territory.

21.     Upon information and belief, BSD entered into an "Addendum to Preferred Distributor Agreement" with UIC on or about May 1, 2003 (the "BSD/UIC Addendum"). A true and correct copy of the BSD/UIC Addendum that has been produced by Plaintiffs is attached hereto as Exhibit B and incorporated herein by reference.

22.     Page 9 of the BSD/UIC Addendum contains the following provisions:

> We [UIC] covenant that Unilever Ice Cream will use its best
> efforts to stop any transshipment of Novelty Products to American
> Wholesale, Inc., any affiliate of American Wholesale, Inc., Pars
> Ice Cream, any affiliate of Pars Ice Cream, David Sadeghi, any
> member of the Sadeghi family, or any entity owned or controlled
> by, or otherwise affiliated with, David Sadeghi or a member of the
> Sadeghi family (collectively "AWI/Pars/Sadeghi") into the
> Territory from outside the Territory; provided, however, under no
> circumstances shall Unilever Ice Cream be required to expend any
> funds or commence litigation against any person to fulfill its
> obligations under this paragraph.

23.     The BSD/UIC Addendum does not purport to preclude the transshipment of non-

branded Unilever products by any entities other than Pars of Maryland and "AWI/Pars/Sadeghi"

(as defined in the BSD/UIC Addendum).

24.     BSD has interpreted the BSD/UIC Addendum to preclude Pars of Maryland and

other persons and entities associated with the Sadeghi family from selling Unilever products, that

they purchase from BSD, in BSD's territory.

25.     BSD has interpreted the BSD/UIC Addendum to preclude Pars of Maryland and

other persons and entities associated with the Sadeghi family from selling Unilever products, that

they purchase from sub-distributors of BSD, in BSD's territory.

26.     Pars of Maryland has been doing business with UIC or its subsidiaries for

approximately fifteen years. During that time, Pars of Maryland has never seen a provision in a

UIC contract like the provisions set forth above contained in the BSE/UIC Distributor

Agreement and the BSD/UIC Addendum, which single out a family and a group of companies

for a boycott.

27.     Pars of Maryland has been in the ice cream distribution business for

approximately seventeen years. During that time, has never seen a provision in a product

supplier's contract like the provisions set forth above, which singles out a family and a group of companies for a boycott.

28.     UIC and BSE and BSD agreed to the above-referenced provisions of the BSE/UIC Distributor Agreement and the BSD/UIC Addendum, respectively.

29.     BSE and BSD's, and their co-conspirator's, agreement to preclude Pars of Maryland and "AWI/Pars/Sadeghi" (as defined in the BSE/UIC Distributor Agreement and the BSD/UIC Addendum) constitute an illegal restraint of trade, boycott and/or unfair competition.

30.     Pars Ice Cream Co. ("PICC") – a separate corporation from Pars of Maryland – entered into an "Addendum to Preferred Distributor Agreement" with UIC on or about October 1, 2005 (the "PICC/UIC Addendum"). A true and correct copy of the PICC/UIC Addendum is attached hereto as Exhibit C and incorporated herein by reference.

31.     The PICC/UIC Addendum and the accompanying Preferred Distributor Agreement establish PICC as the exclusive distributor of certain ice cream and other frozen dessert products in certain channels of trade in a substantial portion of the State of Michigan.

32.     The first paragraph on page 2 of the PICC/UIC Addendum states:

> Without our [UIC] prior written consent, you [PICC] and your affiliates agree not to represent, distribute or sell, directly or indirectly, Products, whether acquired from Unilever of any other person, to any person outside the Territory or to any class or channel of trade other than the Channels in the Territory. Specifically, you shall not sell to any person that is located outside of the Territory, or to any person you know or have reason to believe will resell Products to any person that is located outside of the Territory.

33.     Both PICC and Pars of Maryland understood, and continue to understand, that this provision only prohibits PICC and its sub-distributors from shipping Unilever products from the Michigan Territory to another Territory.

34.     It is well known in the ice cream distribution business that UIC has an open market policy for all of its territories with a few exceptions.  Generally, and under distributors' course of dealing with UIC specifically, non-exclusive products may be sold in the territory of a preferred or otherwise exclusive distributor by other distributors.

35.     BSE and BSD have relied upon their illegal contracts, combinations and/or conspiracies in restraint of trade, and the PICC/UIC Addendum, as bases for their theory that Pars of Maryland and other persons and entities associated with the Sadeghi family have tortiously interfered with their contractual relations and their prospective advantages and committed other wrongdoing.

36.     Upon their application for preliminary injunctive relief, BSE and BSD have obtained a court order, enforcing their illegal contracts, combinations and/or conspiracies in restraint of trade.

## COUNT I

## VIOLATION OF SECTION 1 OF THE SHERMAN ACT

### (GROUP BOYCOTT/CONCERTED REFUSAL TO DEAL)

37.     Pars of Maryland repeats and realleges paragraphs 1 through 36 of the Complaint as if fully set forth herein.

38.     BSE and BSD, along with their co-conspirator, has entered into continuing illegal contracts, combinations and/or conspiracies in restraint of trade, the purpose of and effect of which are to eliminate competition from Pars of Maryland and "AWI/Pars/Sadeghi" (as defined in the BSE/UIC Distributor Agreement and the BSD/UIC Addendum) in the sale of non-branded Unilever products in the D.C. metro area.

39.     BSE and BSD, along with their co-conspirator, has entered into continuing illegal contracts, combinations and/or conspiracies in restraint of trade, which constitute a boycott or

concerted refusal to deal, because Pars of Maryland and other persons and entities associated with the Sadeghi family are known in the industry as discounters, offering highly competitive prices to its customers.

40.     These contracts, combinations or conspiracies have caused substantial anticompetitive effects in the ice cream distribution market because they have excluded competition by Pars of Maryland and "AWI/Pars/Sadeghi" (as defined in the BSE/UIC Distributor Agreement and the BSD/UIC Addendum).

41.     These contracts, combinations or conspiracies have no legitimate business purpose. They achieve no legitimate efficiency benefit to counterbalance the anticompetitive effects, and the damage to the public good and other lines of commerce, that they cause in the market.

42.     BSE's and BSD's contracts, combinations and/or conspiracies constitute a boycott or concerted refusal to deal and an unreasonable restraint of interstate trade and commerce and are in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

43.     As a result of BSE and BSD's unlawful conduct, which are violations of Section 1 of the Sherman Act, Pars has been injured in its business and property in an amount not presently known, but which is, at a minimum, millions of dollars, prior to trebling.

44.     As a direct and proximate result of BSE's and BSD's conduct, Pars of Maryland has been injured in its business and property and suffered damages.

45.     By virtue of the foregoing, Pars of Maryland should be awarded damages in an amount to be determined at trial, trebled by virtue of the Clayton Act, BSE and BSD should be enjoined from further illegal conduct and the above-referenced provisions of the BSE/UIC

Distributor Agreement and the BSD/UIC Addendum should be declared invalid and unenforceable.

<h3 style="text-align:center"><strong><u>COUNT II</u></strong></h3>

<h3 style="text-align:center"><strong><u>VIOLATION OF SECTION 1 OF THE SHERMAN ACT</u></strong></h3>

(HORIZONTAL RESTRAINT OF TRADE)

46.     Pars of Maryland repeats and realleges paragraphs 1 through 36 of the Complaint as if fully set forth herein.

47.     BSE and BSD maintain significant market power in the D.C. metro ice cream distribution market.

48.     UIC acted to exclude Pars of Maryland and other persons and entities associated with the Sadeghi family from the D.C. metro ice cream distribution market for non-branded Unilever products at the express demand of BSE and BSD.

49.     BSE and BSD has entered into continuing illegal contracts, combinations and/or conspiracies in restraint of trade, the purpose of and effect of which are to eliminate competition from Pars of Maryland and "AWI/Pars/Sadeghi" (as defined in the BSE/UIC Distributor Agreement and the BSD/UIC Addendum) in the sale of non-branded Unilever products in the D.C. metro area.

50.     BSE and BSD has entered into continuing illegal contracts, combinations and/or conspiracies in restraint of trade because Pars of Maryland and other persons and entities associated with the Sadeghi family are known in the industry as offering highly competitive prices to its customers.

51.     BSE and BSD's contracts, combinations, and/or conspiracies constitute an unreasonable restraint of interstate trade and commerce and are illegal under Section 1 of the Sherman Act, 15 U.S.C. § 1.

52.     BSE and BSD – individually, and collectively among themselves – possess and exercise market power over UIC and consumers.  Their ability to get UIC to agree not to supply Pars of Maryland and "AWI/Pars/Sadeghi" (as defined in the BSE/UIC Distributor Agreement and the BSD/UIC Addendum), or not to allow those parties to sell, non-branded Unilever products in the D.C. metro area is evidence of the individual and collective market power of BSE and BSD.

53.     These contracts, combinations or conspiracies have caused substantial anticompetitive effects in the ice cream distribution market because they have excluded competition by Pars of Maryland and "AWI/Pars/Sadeghi" (as defined in the BSE/UIC Distributor Agreement and the BSD/UIC Addendum).

54.     These contracts, combinations or conspiracies have no legitimate business purpose.  They achieve no legitimate competitive benefit to counterbalance the anticompetitive effects, and the damage to the public good, that they cause in the market.

55.     As a result of BSE and BSD's unlawful conduct, which are violations of Section 1 of the Sherman Act, Pars of Maryland has been injured in its business and property in an amount not presently known, but which is, at a minimum, millions of dollars, prior to trebling.

56.     As a direct and proximate result of BSE and BSD's conduct, Pars of Maryland has been injured in its business and property and suffered damages.

57.     By virtue of the foregoing, Pars of Maryland should be awarded damages in an amount to be determined at trial, trebled by virtue of the Clayton Act, BSE and BSD should be enjoined from further illegal conduct and the above-referenced provisions of the BSE/UIC Distributor Agreement and the BSD/UIC Addendum should be declared invalid and unenforceable.

## COUNT III

## VIOLATION OF SECTION 1 OF THE SHERMAN ACT

(VERTICAL RESTRAINT OF TRADE)

58.    Pars of Maryland repeats and realleges paragraphs 1 through 36 of the Complaint as if fully set forth herein.

59.    UIC, an ice cream product supplier, and BSE and BSD, ice cream product distributors, agreed to territorial restraints to reduce and/or eliminate competition and drive up and/or maintain prices.

60.    There is no evidence that affording BSE and BSD exclusive distributorships for non-branded Unilever products has increased inter-brand competition or conferred any competitive benefit upon the public.

61.    To the contrary, BSE and/or BSD have expended significant resources to promote and/or sell other (non-Unilever) non-branded products.

62.    BSE and BSD's, and their co-conspirator's, contracts, combinations, and/or conspiracies constitute an unreasonable restraint of interstate trade and commerce and are violations of Section 1 of the Sherman Act, 15 U.S.C. § 1.

63.    These contracts, combinations or conspiracies have no legitimate business purpose.  They achieve no legitimate efficiency benefit to counterbalance the anticompetitive effects, and the damage to the public good, that they cause in the market.

64.    As a result of BSE and BSD's unlawful conduct, which are violations of Section 1 of the Sherman Act, Pars of Maryland has been injured in its business and property in an amount not presently known, but which is, at a minimum, millions of dollars, prior to trebling.

65.    As a direct and proximate result of BSE and BSD's conduct, Pars of Maryland has been injured in its business and property and suffered damages.

66. By virtue of the foregoing, Pars of Maryland should be awarded damages in an amount to be determined at trial, trebled by virtue of the Clayton Act, BSE and BSD should be enjoined from further illegal conduct and the above-referenced exclusive distributorships should be declared invalid and unenforceable.

## COUNT IV

## DECLARATORY JUDGMENT

(PARS OF MARYLAND'S RIGHTS AND OBLIGATIONS UNDER THE PICC/UIC ADDENDUM)

67. Pars of Maryland repeats and realleges paragraphs 1 through 36 of the Complaint as if fully set forth herein.

68. The first paragraph on page 2 of the PICC/UIC Addendum states:

> Without our [UIC] prior written consent, you [PICC] and your affiliates agree not to represent, distribute or sell, directly or indirectly, Products, whether acquired from Unilever of any other person, to any person outside the Territory or to any class or channel of trade other than the Channels in the Territory. Specifically, you shall not sell to any person that is located outside of the Territory, or to any person you know or have reason to believe will resell Products to any person that is located outside of the Territory.

69. PICC and Pars of Maryland understood, and continue to understand, that this provision only prohibits PICC and its sub-distributors from shipping Unilever products from the Michigan Territory to another Territory.

70. Generally, non-exclusive products may be sold in the territory of an otherwise exclusive distributor by other distributors.

71. Accordingly, Pars of Maryland is entitled to a declaration that the PICC/UIC Addendum does not preclude either it or and other persons and entities associated with the Sadeghi family from selling non-branded UIC products outside of Michigan.

**WHEREFORE**, Pars of Maryland requests the following relief:

1.      that the Court enter judgment against BSE and BSD, and in favor of Pars of Maryland on each of the causes of action asserted in this Complaint;

2.      that the Court issue a permanent injunction, enjoining and restraining BSE and BSD from engaging in the unlawful conduct set forth herein, including but not limited to, that BSE and BSD, their directors, officers, employees, agents, successors, and assigns, be permanently enjoined and restrained from, in any manner, directly or indirectly, boycotting Pars of Maryland or "AWI/Pars/Sadeghi" (as defined in the BSE/UIC Distributor Agreement and the BSD/UIC Addendum), and committing any other violations of Section 1 of the Sherman Act, and that BSE and BSD, their directors, officers, employees, agents, successors, and members be permanently enjoined and retrained from, in any manner, directly or indirectly, committing any other violations of statutes having a similar purpose or effect;

3.      that the Court declare that the referenced provisions of the BSE/UIC Distributor Agreement and the BSD/UIC Addendum are unenforceable and cannot be relied upon for the purpose of establishing claims of tortious interference with contractual relations, tortious interference with prospective advantage or any other claims by BSE or BSD;

4.      that the Court award Pars of Maryland the compensatory damages determined to have been sustained by it;

5.      that the Court award Pars of Maryland trebled damages pursuant to Section 4 of the Clayton Act;

6.      that the Court award Pars of Maryland attorneys' fees, expert fees and costs, pursuant to Section 4 of the Clayton Act;

7.     that the Court direct BSE and BSD to pay restitution for and to disgorge to Pars of Maryland all unlawfully or inequitably obtained monies, profits and ill-gotten gains derived from their unlawful, fraudulent, and inequitable conduct, as set forth in this Complaint;

8.     that the Court declare that the PICC/UIC Addendum does not preclude either Pars of Maryland or other persons and entities associated with the Sadeghi family from selling non-branded UIC products outside of Michigan; and

9.     that the Court award Pars of Maryland such other and further relief as it shall deem just and appropriate.

## JURY TRIAL DEMAND

Pars of Maryland demands a trial by jury on all issues.

Dated:  May 15, 2006                    Respectfully submitted,

_John R. Gerstein_
Paul C. Vitrano
ROSS, DIXON & BELL, L.L.P.
2001 K Street, N.W.
Washington, D.C.  20006-1040
(202) 662-2000

*Attorneys for Plaintiff Pars Ice Cream Co. of Maryland*

**Of Counsel**

Edward J. Carnot
1225 Torrey Pines Road
LaJolla, CA 92037

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Complaint was sent by electronic mail,

facsimile and first class mail, postage prepaid, this 15ᵗʰ day of May, 2006, to:

Timothy F. Maloney
(tmaloney@jgllaw.com)
Veronica Byam Nannis
(vnannis@jgllaw.com)
Jason L. Levine
(jlevine@jgllaw.com)
JOSEPH, GREENWALD & LAAKE, P.A.
6404 Ivy Lane, Suite 400
Greenbelt, MD 20770
Facsimile: (301) 220-1214

_____
Paul C. Vitrano

337454 v 1                                             15